**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 09-208-DLB**

**MICHAEL S. BALL**                                                                   **PLAINTIFF**

**vs.**                      <u>**MEMORANDUM OPINION AND ORDER**</u>

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                        **DEFENDANT**

\*     \*     \*     \*     \*     \*     \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Michael Ball filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) on September 15, 2006. (Tr. 105-12). At the time of filing, Plaintiff was 31 years old and alleged a disability onset date of August 16, 2005. (Tr. 105). He asserts he is disabled due to severe depression, anxiety, and substance abuse problems. (Tr. 135). His applications were denied initially and on reconsideration. (Tr. 78-81, 85-90). At Plaintiff's request, an administrative hearing was conducted on October 9, 2008, by Administrative Law Judge (ALJ) Frank Letchworth. (Tr. 44-73). On March 11, 2009, the ALJ ruled that, although Plaintiff was under a disability,

1

his substance abuse was a contributing factor material to the determination of disability; therefore, Plaintiff was not disabled under the Social Security Act and not entitled to DIB or SSI benefits. (Tr. 9-24). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 19, 2009. (Tr. 1-3).

On June 23, 2009, Plaintiff filed the instant action. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #10, 11).

## II.   DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 11). At Step 2, the ALJ determined Plaintiff's polysubstance dependence, including benzodiazepines and opiates; mood disorder, not otherwise specified; and anxiety disorder, not otherwise specified to be "severe" impairments within the meaning of the regulations. (Tr. 12-18).

At Step 3, the ALJ concluded that Plaintiff's impairments met Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). (Tr. 18-20). However, because the record contained medical evidence of drug and alcohol addiction, the ALJ performed – in conjunction with the sequential evaluation – the two-step analysis detailed in 20 C.F.R §§ 404.1535, 416.935, to determine whether Plaintiff's polysubstance abuse was a contributing factor material to the determination of disability. (Tr. 20-24). The ALJ then concluded that, even if Plaintiff ceased to abuse drugs and alcohol, he would continue to have severe impairments, but that none of those remaining impairments would meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-21).

At Step 4, the ALJ found that, if Plaintiff stopped his substance abuse, he would

possess the residual functional capacity (RFC) to perform a full range of work at all exertional levels. However, due to the mental impairments Plaintiff would continue to suffer despite refraining from drugs and alcohol, the ALJ imposed the following non-exertional limitations:

> He is able to understand, remember and carry out simple and non-detailed tasks; maintain concentration and attention for 2 hour segments; complete a normal workweek without excessive interruption from psychologically-based symptoms; demonstrate judgment and make adequate decisions; respond appropriately to supervisors and coworkers in a setting that is task versus public oriented; maintain appropriate hygiene and dress suitably and adapt to routine changes and avoid hazards on a sustained basis.

(Tr. 21). Based upon these findings, the ALJ determined that, even if Plaintiff no longer abused drugs and alcohol, his non-exertional limitations would prevent him from returning to his past relevant work as an automotive assembler. (Tr. 23).

At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines to determine that, if Plaintiff ceased his polysubstance abuse, there would exist a significant number of jobs in the national economy Plaintiff could perform despite his non-exertional limitations, and that a finding of "not disabled" was appropriate under the Medical-Vocational Guidelines. (Tr. 23-24). In doing so, the ALJ noted that, although Plaintiff's ability to perform work at all exertional levels would be compromised by his non-exertional limitations, application of the Medical-Vocational Guidelines remained proper because Plaintiff's "limitations have little or no effect on the occupational base of unskilled work at all exertional levels." (Tr. 23). Consequently, the ALJ concluded that because Plaintiff would not be disabled if he stopped abusing drugs and alcohol, Plaintiff's polysubstance abuse was a "contributing factor material to the determination of disability;" therefore, Plaintiff had not – at any time – been disabled within

the meaning of the Social Security Act.  (Tr. 24).

### C. Analysis

Plaintiff advances two arguments on appeal.  First, Plaintiff argues that the ALJ failed to set forth specific reasons for discrediting Plaintiff's testimony regarding the severity of his depression and anxiety.  Second, Plaintiff contends that the ALJ failed to adequately consider the opinions of Plaintiff's "treating physician" Certified Nurse Practitioner Christina Raman.  Each of these arguments will be addressed in turn.

#### 1. The ALJ Did Not Err in Concluding that Plaintiff's Testimony Regarding the Severity of His Impairments Was Not Entirely Credible

Plaintiff argues that the ALJ failed to perform a proper credibility analysis. Specifically, Plaintiff contends that the ALJ erred in failing to provide a specific rationale for rejecting Plaintiff's testimony regarding the severity of his symptoms, as required by Social Security Ruling 96-7p.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). However, an ALJ's credibility determination "cannot be based on an intangible or intuitive notion about an individual's credibility;" rather, the ALJ's decision must set forth "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently clear to the individual and any subsequent reviewers the weight the adjudicator have to the individual's statements and

the reasons for that weight." S.S.R. 96-7p (1996).

In the present case, after reviewing the evidence in the record, the ALJ concluded that Plaintiff's assertion that "he is totally disabled from gainful activity due to depression and anxiety" was not credible. (Tr. 22). Contrary to Plaintiff's assertions, however, the ALJ provided two reasons sufficient to support his finding that Plaintiff's subjective complaints and alleged limitations were not entirely credible.

First, the ALJ noted Plaintiff's lack of candor at the administrative hearing, and the inconsistency of Plaintiff's statements throughout the record. The ALJ observed that the administrative record is replete with examples of inconsistent statements made by Plaintiff regarding the severity of his impairments and his daily activities. The ALJ noted the following examples: 1) that "the prehearing development forms completed by both the claimant and his mother . . . clearly failed to identify any of the claimant's significant substance abuse issues;" 2) that although Plaintiff "previously claimed that he did not drive due to anxiety-related issues . . . he admitted during the hearing that his license was taken following his second drunk driving charge;" and 3) despite Plaintiff's testimony "that he has never been charged with drug trafficking" in August 2007, he told an emergency room therapist that he had a pending drug trafficking charge. (Tr. 22).

Because "the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true" the above-cited examples of Plaintiff's failure to tell the truth on various occasions – including during the administrative hearing conducted by ALJ Letchworth – provided a sufficient basis for the ALJ to disbelieve Plaintiff's testimony concerning the severity of his impairments. S.S.R. 96-7p (1996) ("One strong indication of the credibility

6

of an individual's statements is their consistency, both internally and with other information in the case record.").

Second, the ALJ determined that Plaintiff's history of non-compliance with prescribed treatment – specifically recommendations for outpatient substance abuse treatment – rendered Plaintiff's testimony not fully credible. (Tr. 22) ("[T]he medical evidence . . . depicts an incredibly disjointed course of treatment that appears limited to a handful of emergency room visits due to substance abuse-related issues, but unfortunately the claimant has consistently failed to follow through with numerous recommendations for outpatient follow-up treatment upon his discharges."). Plaintiff's consistent failure to follow prescribed treatment undermines his credibility, and provides a sufficient basis for the ALJ to discount Plaintiff's testimony. *See* S.S.R. 97-6p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.")

Plaintiff contends that the ALJ failed to take into account the fact that he "lives in a rural, economically depressed area, and that he has no income," and is therefore "unable to afford continued treatment on a repetitive basis." (Doc. #10 at 5). Although this specific argument was not addressed by the ALJ, the record contradicts Plaintiff's assertion that his lack of compliance with prescribed treatment is due to poverty. Evidence in the record establishes that Plaintiff has been able, for the past two years, to travel across state lines approximately every other month to obtain medical treatment and prescriptions – specifically Xanax – from CNP Raman. (Tr. 53-54, 264-71, 1061-1082). In addition, as noted by the ALJ, Plaintiff's significant use of OxyContin – up to 15 pills a day – and

7

cocaine indicate that Plaintiff is not only able to leave his home, but has the financial means to purchase illegal drugs.  Therefore, Plaintiff's allegation that his poverty prevented him from complying with prescribed treatment is baseless, and Plaintiff's history of non-compliance with treatment provided a sufficient basis for the ALJ to discount the credibility of Plaintiff's testimony.

### 2. The ALJ Gave Proper Weight to the Medical Opinions of Certified Nurse Practitioner Raman

Plaintiff's second argument on appeal is that the ALJ improperly substituted his own opinion for that of CNP Raman, Plaintiff's "treating physician."  Specifically, Plaintiff contends that the ALJ "failed to adequately consider the opinion of CNP Roman [sic] in regard to her status as the Claimant's treating physician or in conjunction with the medical reports and opinions of record." (Doc. #10 at 4).  This argument is without merit for two reasons.

First, CNP Raman is not considered a "treating physician" under the Social Security regulations because she does not qualify as an "acceptable medical source."  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).  Rather, as a Certified Nurse Practitioner, Ms. Raman is properly classified under the regulations as an "other source."  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) ("Other sources include, but are not limited to . . . Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).").

Unlike the opinions of treating physicians, opinions from "other sources" are not

entitled to controlling weight; rather the weight given to such opinions "will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . ." S.S.R. 06-03p (2006). Furthermore, the ALJ is not required to explain the weight given to the opinions of "other sources," or to give reasons why such an opinion was discounted. *Id.* ("Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources' . . . .").

Second, Plaintiff does not indicate which specific opinion of CNP Raman the ALJ failed to properly consider, stating only that "the ALJ failed to give proper credence to the reports and opinions of CNP Roman [sic] . . . ." (Doc. #10 at 4). Where, as here, the Plaintiff has failed to mount a focused challenge to the ALJ's opinion, the Court need not review all of CNP Raman's treatment notes and medical evaluations in order to determine "whether [they] might contain evidence that arguably is inconsistent with the Commissioner's decision, and . . . whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc.* Sec., 447 F.3d 477, 491 (6th Cir. 2006).

The ALJ's opinion indicates that he was aware of Plaintiff's long-standing treatment relationship with CNP Raman, and took account of her opinions when making his disability determination. (Tr. 22) ("I also note that Ms. Ramon's [sic] notes throughout 2006, 2007 and 2008 routinely depict the claimant's sleep, appetite, concentration and focus as good."). As Plaintiff has failed to cite any particular opinion that the ALJ did not consider, and in light of the fact that the ALJ was not required to give any set amount of deference or consideration to the medical opinions of "other sources", the Court finds that the ALJ did

9

not err in failing to give controlling weight to the opinions of CNP Raman.

### III.   CONCLUSION

The record contains substantial evidence supporting the ALJ's assessment of Plaintiff's credibility and his ultimate finding that Plaintiff is not disabled. Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 9th day of February, 2010.



G:\DATA\SocialSecurity\MOOs\6-09-208-BallMOO.wpd